27 C.C.P.A.(Patents)

### UNITED STATES GYPSUM CO. v. AMERICAN GYPSUM CO.

### Patent Appeal No. 4172.

Court of Customs and Patent Appeals.

Feb. 26, 1940.

Arthur A. Olson and A. Arnold Brand, both of Chicago, Ill., for appellant.

George E. Tew, of Washington, D. C., (Edward A. Hampson, of Chicago, Ill., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents affirming that of the Examiner of Interferences dismissing appellant's notice of opposition to ap-

pellee's application for registration of a trade-mark and holding such registration allowable.

The goods of the respective parties are of the same descriptive properties—in many instances identical. Their nature may be discerned from the following quoted from the application of appellee: " * * * gypsum wall board, aluminum foil insulating board, gypsum lath, aluminum foil insulating lath, tongue and groove sheathing, fibred and unfibred cement plasters, wood fibered plaster, bond plaster, sanded wall plaster, sanded wood fiber plaster, gauging plaster, prepared trowel finish, plate glass stucco, mixing plant stucco, moulding plaster, patching plaster, painters' plaster, finish lime, masons' lime, colored plasters, acoustical plaster, dry fill insulation, rock wool insulation, joint filler, joint cement * *."

The mark which appellee seeks to register for use upon the goods is a design mark consisting, as described by the commissioner, "of two parallel vertical stripes, one red and the other blue, intersected by two similar horizontal stripes, the intersection being obscured by the representation of an Indian's head inclosed within a blue circle." The application claims use of the mark "since September 1935."

In its notice of opposition appellant alleged prior use of various marks, pleading five registrations. Three of these (Nos. 172,927, 256,777, and 264,649) are of the words "Red Top." Another (No. 160,315) is a design described in the certificate as consisting "of a red band arbitrarily placed at the top of the bags containing the goods." The fifth (No. 267,991) is also a design, described in the certificate by the statement: "The drawing is lined for red and the trade mark consists of a red band or red stripe extending across the goods to which it is applied." Each of the registrations bears a date prior to that claimed by appellee for the use of its mark.

The record in the case is quite voluminous, the reasons of appeal are numerous, and appellant's brief is very elaborate. The real issue in the case, however, is a simple one, the question being whether the mark, registration of which is applied for, so resembles the marks of appellant that registration should be denied because of the provision in section 5 of the Trade-Mark Act of February 20, 1905, 15 U.S.C.A. § 85, reading: "Provided, That trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered."

From the description of the mark sought to be registered it will be seen that it is purely a design mark. It contains no word or words. Hence, obviously, there is no possibility of any confusion in sound between it and the word marks of appellant. Furthermore, there is nothing about appellee's design mark which embraces any suggestion contained in the words "Red Top." So, it is clear that the registered word marks of appellant have no relevancy to the issue here, and consideration must be confined to a comparison of the physical appearance of appellant's designs with the physical appearance of the design of appellee.

As has been indicated, appellant's design mark No. 160,315 consists merely of a red band. By the language of the certificate of registration the location of this band would seem to be limited, the language being "arbitrarily placed at the top of the bags containing the goods." Appellant's design mark No. 267,991 likewise consists merely of a red band. The language of the certificate of registration in this instance, however, does not limit the location of the band to any particular place on the goods, or on the container of the goods, but defines it as "extending across the goods to which it is applied." Appellant argued, and the commissioner agreed, that under this broad language it would have the right to place the band, or stripe, on the goods "in any location it pleases and extending in any direction it pleases."

For the purposes of this case we shall accept as correct the holding of the commissioner upon that point. That is to say, we shall assume that appellant would have the right to arrange the mark shown in its registration No. 267,991 so that it would be in the form of a red vertical stripe intersected by a red horizontal stripe, although the drawing discloses no such arrangement, the showing being merely of a red band arranged vertically. Of course, the assumed arrangement does not include any obscuration of the intersection, a very prominent and distinctive feature of the mark sought

to be registered, since appellant makes no provision for that in its registration.

Comparing the appearance of the respective marks (that of appellant being visualized in the assumed arrangement), can it be said that there is any reasonable likelihood of confusion resulting? It seems perfectly clear to us that there is not.

■ Appellant did not, of course, by the use or registration of a design having a single color acquire the right to prevent the registration of every design in which that color may appear.

■ Appellant, as it had the right to do, chose to use and register as a trade-mark a design consisting of a single color. It might have chosen other colors, or a combination of various colors, had it so elected, but it did not so elect.

Appellant has presented some argument here to the effect that during the cross-examination of one of the witnesses called on behalf of appellee evidence of actual confusion was adduced. We have examined this testimony. The incident was a trivial one. Of it the·commissioner said: "One witness, for example, who was shown a bag bearing applicant's name and trademark, and was told that it was a bag of The American Gypsum Company, referred to the mark as a 'trade-mark of the U. S.' In response to a leading question, answered without objection, he immediately corrected himself; and I think the first answer was clearly due to inadvertence rather than to confusion of trade-marks."

■ We agree with the commissioner upon this point. We also agree with the following statement of the commissioner: "Other witnesses testified that it is common practice among dealers in building materials, and more particularly plaster products, to substitute other brands for those ordered by contractors. It is thus argued that there is greater opportunity for confusion than would normally be present. It appears, however, that the practice is well known in the trade, and the logical result would seem to be unusual care in examining labels. In any event·such practice does not render the marks of the parties deceptively similar, nor is it shown that they have ever been confused."

Only one other contention on behalf of appellant requires our attention.

The concluding sentence of the notice of opposition states: "Twenty-eight specimens of the trade-marks as actually used by your petitioner are attached hereto."

Referring to these specimens the commissioner in his original decision said: "As such trade-marks are not otherwise identified in the notice these specimens are of little assistance, including, as they do, bags, boxes, labels and stickers, with various decorations and printed matter which may or may not have trade-mark significance."

Appellant filed a petition for rehearing which was denied. It then filed a second petition seeking amplification of the commissioner's decision which was granted in part, the commissioner saying:

"In the notice of opposition it was alleged that opposer had adopted and used 'the following trade-marks, shown in the attached facsimiles,' and that: 'Twenty-eight specimens of the trade-marks as actually used by your petitioner are attached hereto.' In point of fact such specimens were not attached to the notice, and because of their bulk could not have been; but they were filed at the same time, and were sufficiently identified, so that for the purpose of this decision they may be considered as having been physically attached.

"One of these specimens is a cardboard carton bearing the words 'Red Top Patching Plaster' and opposer's registered trade-mark 'UgS.' It also carries a number of blue and white bands forming a series of rectangular panels for the display of printed matter, and near the top of the carton one of the horizontal blue bands parallels a red band. There is nothing to indicate that any of these bands is used as a trade-mark, and certainly no such significance is self-apparent. They have the appearance of being nothing more than somewhat conventional decorations.

"I am unable to agree with counsel for opposer that the above-quoted reference to this exhibit in the notice of opposition amounts to an allegation that opposer had used combined blue and red bands as a trade-mark. There being otherwise no suggestion in the notice that a blue band had been used, either in combination or alone, I am clearly of the opinion that such use was not and is not an issue in this proceeding."

Before us appellant has dwelt upon the specimen so alluded to and has referred to certain other exhibits as showing blue stripes.

[5] We are in agreement with the holding of the commissioner to the effect that

662

appellant neither pleaded nor proved trademark use of any design showing a blue stripe. Furthermore, we may add, that whatever may have been the purpose of the use of the blue stripe the exhibit shows it in an arrangement which is so entirely different from the arrangement and appearance of the mark sought to be registered, observing the latter as a whole—as we must —that we think there is no reasonable probability of confusion.

This case received very full consideration by the tribunals of the Patent Office. The Examiner of Interferences granted a rehearing following his first decision, and then a second rehearing. In his decisions on the rehearings he responded fully upon the points suggested in the requests. The commissioner denied the first request for a rehearing but, as has been stated, granted a second request and amplified his views upon the point suggested in that request. Every relevant issue was discussed, and, in our opinion, properly decided.

The decision of the Commissioner of Patents is affirmed.

Affirmed.